IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| PAULINE FAGBUYI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-02876-GJH |
| | ) | |
| PRINCE GEORGE'S COUNTY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

*/s/ Cynthia Goode Works*
Cynthia Goode Works, JD, LLC.
The Law Office of Cynthia Goode Works, LLC
9701 Apollo Drive
Suite 301
Largo, Maryland 20774
(301) 474-5562
www.goodeworkslaw.com

*/s/ Lisa Alexis Jones*
Lisa Alexis Jones, Esq.
1330 Avenue of the Americas
14th Floor
New York, N.Y. 10019
(646) 350-2823
ljones@ckrlaw.com

***Counsel for Plaintiff***

Dated: June 10, 2019

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.......…………………………….          1

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS TO WHICH THERE ARE GENUINE DISPUTES.................          1

PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL
FACTS IN DISPUTE………………………………………..…………          12

ARGUMENT…………………………………………………...………..          18

   A.  Summary Judgment Standards……………..…………………          18

   B.  Material Factual Disputes Preclude
      Summary Judgment On Ms. Fagbuyi's
      Age Discrimination Claims…………………..………………….…          19

        i.     Ms. Fagbuyi Can Establish
              Unlawful Discrimination With
              Direct Evidence of Age-Based Bias………………          20

        ii.    Ms. Fagbuyi Can Establish
              Prima Facie Case of Age
              Discrimination in Her Employment Termination…          22

        iii.   Defendants' Proffered Explanations
              For Ms. Fagbuyi's Termination are Pretext
              For Unlawful Discrimination ……………….          24

CONCLUSION…………………………………………………………..          27

CERTIFICATE OF SERVICE…………………………………………..          28

## I.    PRELIMINARY STATEMENT

Pauline Fagbuyi ("Ms. Fagbuyi" or "plaintiff") respectfully submits this memorandum in opposition to the motion for summary judgment filed by Prince George's County and Prince George's County Department of Health ("PG County," "Department of Health," or "defendant"). Ms. Fagbuyi brings this action to remedy age discrimination, in violation of the Age Discrimination in Employment Act and the Maryland Human Rights Act. Defendants do not seek dismissal of Ms. Fagbuyi's Maryland Human Rights Act claim by this motion.

In moving for summary judgment, defendants ask this Court to ignore Ms. Fagbuyi's supervisor's incessant comments about her age, retirement plans, an age-biased justifications to support the supervisor's efforts to transfer Ms. Fagbuyi as she was also orchestrating the circumstances that ultimately resulted in plaintiff's termination. Defendants also ask the Court to ignore the undisputed record evidence that they had no actual zero-tolerance policy that mandated Ms. Fagbuyi's termination and that her termination was in derivation of the County's Personnel Law. In sum, a reasonable trier of fact could more than conclude that Ms. Fagbuyi's termination was because of her age and the proffered justifications of defendants were utterly unworthy of belief.

## II.    PLAINTIFF'S STATEMENT OF MATERIAL FACTS TO WHICH THERE ARE GENUINE DISPUTES

Pauline Fagbuyi, hereby submits the following statement of material facts as to which there is a genuine dispute.

1.    Plaintiff was hired on February 21, 2006, by the County as a Community Health Nurse I in the Maternal and Child Health Division, as noted in her Employee Notification Form ("EAN"). (Ex. 1, Fagbuyi EAN Form.)

**RESPONSE:** Admitted.

2.    When Plaintiff was hired, the County had a policy in effect requiring all Community Health Nurses to possess a valid nursing license which Plaintiff possessed on

her date of hire. (Ex. 13.1 & 13.3, License Monitoring Policy, June 27, 2005 and Dec. 30, 2015, respectively.)

**RESPONSE:** Admitted.

3.      In addition, Plaintiff's position description also requires she possess a valid nursing license. (Ex. 3, Fagbuyi Position Description.)

**RESPONSE: DENIED.** Plaintiff's position description only requires licensure at the time of appointment.

4.      This is consistent with State Law set forth in COMAR 10.02.01.14 which requires that all registered nurses maintain a valid and updated license. (Ex. 9.2 COMAR 10.27.01.15.)

**RESPONSE: DENIED.** The Code of Maryland Regulations is not state statutory law. Ex. 13 at 33-34. Further, by its terms, COMAR specifically states "A licensee has a 30-day grace period beyond the expiration date of a license to renew a license." Id.

5.      Plaintiff was promoted to the position of Community Health Nurse II on February 21, 2007. (Ex. 1, Fagbuyi EAN.)

**RESPONSE:** Admitted.

6.      It is undisputed that Plaintiff was satisfactory performing her job duties as a Community Health Nurse prior to her termination. (Ex. 2, Fagbuyi Performance Appraisals.)

**RESPONSE:** Admitted.

7.      During Plaintiff's tenure with the County, she was also covered by her Collective Bargaining Agreement ("CBA") which also governs grievance procedures. (Ex. 6, CBA, Article 45.)

**RESPONSE:** Admitted.

8.     On July 16, 2015, Plaintiff was notified that she was going to be transferred effective August 3, 2015. (Ex. 7, Lewis Dep. 29:20-30:14.; Ex. 7. 2, Notice of Transfer. July 16, 2015.)

**RESPONSE:** Admitted.

9.     Mrs. Ingra Lewis, Plaintiff's immediate supervisor, played no role in the decision to transfer Plaintiff. (Ex. 7, Lewis Dep. 82:21-83:9.)

**RESPONSE: DENIED.** Ex. 7 at 24-33, 82-83.

10.     However, Plaintiff was never transferred. *Id.*

**RESPONSE:** Admitted. Plaintiff was never transferred as she was given a notice of proposed termination instead.

11.     Per Plaintiff, Lewis made comments to her about when she was going to retire, however those comments did not have any impact on her position. (Ex. 15, Fagbuyi Dep. 76:1- 15; 114:16-115:3.)

**RESPONSE:** Admitted to the extent that defendant concedes that Lewis made age-related comments to Ms. Fagbuyi. **DENIED** to the extent that defendant's record citation does not support the averment that the comments did not affect her work environment as the comments made Ms. Fagbuyi feel demeaned and ultimately led to Lewis's recommendation that Ms. Fagbuyi be transferred, put in motion to circumstances of and then recommended her termination. Ex. 7 at 92-93.

12.     During Plaintiffs tenure with the County, Administrative Procedure 221 and Personnel Procedure 217 were in effect and they are policies governing filing internal grievances based on discrimination, retaliation and harassment claims. (Ex. 4, Administrative Procedure 221 & Personnel Procedure 217.)

3

**RESPONSE:** Admitted.

13. Plaintiff did not file any internal complaint pursuant to Administrative Procedure 221 or Personnel Procedure 217 alleging discrimination, retaliation, or harassment addressing the comments made by Lewis. (Ex. 13, Johnson. Dep. 99:1-100:22.)

**RESPONSE: DENIED.** Ms. Fagbuyi reported the comments to Lewis's supervisor Thelesa Bryant and Human Resource representative Sonia Johnson. Ex. 15 at 104, 113.

14. Plaintiff also received Workplace Avoidance Harassment Training ("WHAT") on February 22, 2006, which outlines all the procedures set forth in Administrative Procedure 221. (Ex. 5, WHAT Training Form.)

**RESPONSE:** Admitted.

15. On July 21, 2015, Plaintiff was notified by Lewis, the Immunization Program Manager (Community Health Nurse IV), that her license had expired. (Ex. 7, Lewis Dep.16:7- 12; 17:3-4; 46:13-22; 53:18-22.)

**RESPONSE:** Admitted.

16. Lewis indicated that it was routine for all the nurses and the supervisors to receive emails why (sic) their licenses were about to expire. (Ex. 7, Lewis Dep. 52:1-53:17.)

**RESPONSE:** Admitted.

17. The job duties and responsibilities for Lewis included preforming quality assurance checks to make certain that all nursing employees maintained valid licenses. (Ex. 7, Lewis Dep. 46:13-22.)

**RESPONSE:** Admitted.

18. Plaintiff was granted leave to address her licensure issue with the Nursing Licensure Board which is in Baltimore, Maryland. (Ex. 7, Lewis Dep. 54:8-55:20.)

**RESPONSE:** Admitted.

19. Plaintiff failed to return to work on the date of July, 21, 2015 (sic). (Ex. 7, Lewis Dep. 54:8-55:20; 90:16-91:19.)

**RESPONSE: DENIED.** Ms. Fagbuyi returned to work at the end of the day after Lewis had left. Ex. 15 at 130.

20. On August 4, 2015, Plaintiff received a Notice of Proposed Disciplinary Action wherein she was advised of her right to challenge the decision under her CBA because Plaintiff failed to renew her license and she worked on an expired license from June 28, 2015 through July 21, 2015. Plaintiff was 68 years old on the date of her termination. (Ex. 1, Fagbuyi EAN Form; Ex. 7.5, Notice of Proposed Disciplinary Action.)

**RESPONSE:** Admitted to the extent that such was the justification for her termination.

21. On August 7, 2015, Plaintiff filed a response to the Notice of Proposed Disciplinary Action. (Ex. 7.4, Response to Notice of Proposed Disciplinary Action.)

**RESPONSE:** Admitted.

22. Plaintiff also filed a grievance pursuant to her Collective Bargaining Agreement ("CBA") to challenge her termination which was a Step 3 grievance. (Ex. 8, Grievance; Ex. 6, CBA, Article 45; Ex. 9, Ivy Dep. 5:9-6:21.)

**RESPONSE:** Admitted.

23. A grievance hearing was held by Shalisha Hines-Ivy, a Risk Management Specialist, and the Hearing Examiner for the grievance. (Ex. 9, Ivy Dep. 5:6---12.)

**RESPONSE:** Admitted.

24. A grievance hearing is an administrative proceeding wherein each side calls witnesses. (Ex. 9, Ivy Dep. 7:6---8:21.)

**RESPONSE:** Admitted.

25.     At her grievance hearing, Plaintiff was represented by Carlton Gullah, a Union representative. (Ex. 9, Ivy Dep. 9;10-17.)

**RESPONSE:** Admitted.

26.     Pamela Creekmur, Health Officer, Frances Caffie-Wright, Program Chief, Sonia Johnson, Human Resources Manager, and Ingra Lewis, Plaintiffs supervisor, were all present at the grievance hearing. (Ex. 9, Ivy Dep. 10:1-21.)

**RESPONSE: DENIED** to the extent that Creekmur did not attend nor provide testimony during the grievance hearing. Ex. 9 at 9-10.

27.     After the grievance hearing, Ivy issued her findings upholding the termination of the Plaintiff upon finding that the Md. Health Occupations Code Ann. Section 8-312 requires renewal of licenses which expired on the 28th day of the licensee's birth month every 2 years if the licensee renews for 2 years, or 1 year if the licenses renews for year. (Ex. 10, Md. Health Occupations Code Ann., Section 8-312.; Ex. 9, Ivy Dep. 12:11-12:8; Ex 9.1, Grievance Decision; Ex. 9-2, COMAR 10.27.01.15.)

**RESPONSE:** Admitted.

28.     In addition, Md. Health Occupations Code Ann., Sections 8-701 and 8-706 prohibits individuals from practicing nursing without a license and it prohibits employers from hiring an individual that is not licensed to practice nursing. Here, Plaintiff worked from June 28, 2015, through July 21, 2015 on and (sic) expired license. (Ex. 9.1 Grievance Decision; Ex. 11, Md. Health Occupations Code Ann., Sections 8-701 and 8-706, respectively.)

**RESPONSE: DENIED.** As Ms. Fagbuyi had the right to and did renew her license

within the 30-day grace period, she was at all times licensed for purpose of the statute.

29.     Ivy interpreted the 30-day grace period to mean that Plaintiff had that time to renew her license without having to go through the entire licensure procedures. (Ex. 9, Ivy Dep. 13:14-- 14:20.)

**RESPONSE:** Admitted to the extent that that was Ivy's interpretation. **DENIED** to the extent that Ivy admits that there is no controlling legal authority for her interpretation and that interpretation is inconsistent with the findings of the Personnel Board. Ex. C, Decision and Order of the Personnel Board, Prince George's County, Maryland, In the Matter of Thelesa Bryant, dated August 19, 2016; Ex. 9 at 16-17.

30.     Ivy also took into consideration Section 16-194 of the Prince George's County Code ("PCCC") which requires that all employees maintain the requirements and standards for their positions in reaching her decision, which would include maintaining a license. (Ex. 12, Section 16-194, PGCC.)

**RESPONSE:** Admitted.

31.     Ivy stated that she has handled additional hearings involving employees who have allowed their professional licenses to lapse and she has treated those individuals in the same fashion that she treated Plaintiff. She found against the employees and upheld the terminations. (Ex. 9, Ivy Dep. 20:2-21:21.)

**RESPONSE: DENIED** to the extent Ivy had never adjudicated the lapse of a nursing license other than Ms. Fagbuyi's matter. Ex. 9 at 19-20.

32.     Ivy noted that the County recently terminated another nurse for a similar infraction (allowing her license to expire) and that there was a zero-tolerance policy for that type of conduct. Thus, the County was consistent with the enforcement of the policy. (Ex. 9,

Ivy Dep. 26:3-21)

**RESPONSE:** Admitted to the extent that Ivy relied on defendants' proffer with regard to the circumstances of Bryant's termination and its representation that they had a zero-tolerance policy. Ex. 9 at 26. Plaintiff **DENIES** that defendants actually had a zero-tolerance policy as they represented during the Personnel Board that Bryant had been terminated because she had been less than candid about the circumstances of her termination, had lost Creekmur's trust, was in a management position and that she would not have been terminated had she been a staff nurse. Ex. C at 9.

33.     Ivy additionally noted that Plaintiff admitted that she let her license expire. (Ex. 9, Ivy Dep. 21:1--4.)

**RESPONSE:** Admitted.

34.     Plaintiff never perfected her appeal to the Arbitrator from the grievance hearing which is authorized under her CBA and no additional findings were made about her grievance requiring the County to take additional action. (Ex. 6, CBA, Article 45.)

**RESPONSE:** Admitted.

35.     Plaintiff compares herself to Angela (sic) Beasley, Thelesea Bryant, and Lisa Berry and notes that they were treated more favorably than she was treated based on age. (ECF No. 9, Amend Compl., 18.)

**RESPONSE:** Admitted.

36.     Beasley, a Community Health Nurse 1/11, in the Health and Family Services Division, age 59, (DOB 1956) was hired on May 19, 2003 into the Adult and Geriatric Health and Colorectal Cancer Program. (Ex. 16, Beasley, Letter of Hire, May 14, 2003. Ex. 17, Beasley EAN Form.)

**RESPONSE:** Admitted.

37.     Beasley also had an issue with her license. (Ex. 18, Beasley Notice of Proposed Disciplinary Action, Jan. 30, 2013.)

**RESPONSE:** Admitted.

38.     However, Beasley paid the money to renew her license and she believed her application and renewal process had been completed. (Ex. 19, Beasley Response, Feb. 6, 2013.)

**RESPONSE:** Admitted.

39.     The County's investigation revealed that Beasley was not at fault because the Nursing Board failed to notify her that she needed to complete a criminal record check to obtain her licensee which was a new procedure and they were experiencing a back-log in their cases. (Ex. 20, Beasley Final Notice of Disciplinary Action, Feb. 23, 2013.)

**RESPONSE: DENIED**. The record citation proffered by defendants do not support the instant averments.

40.     Thus, fault was found with the actions of the State Nursing Board and not with the actions of Beasley. *Id.*

**RESPONSE: DENIED**. The record citation proffered by defendants do not support the instant averments.

41.     Thus, Beasley, received a three-day suspension. *Id.*

**RESPONSE:** Admitted.

42.     Bryant, age 46, (DOB 1969), like Plaintiff, was terminated from the County for failure to renew her nursing license. (Ex. 21, Bryant EAN Form; Exhibits 23, 24, & 25 Notice, Second Notice, and Final Notice of Proposed Disciplinary Action dated June 22,

2015, July 2, 2015, and July 16, 2015, respectively.)

**RESPONSE:** Admitted to the extent that the averment reflects the justifications proffered for Ms. Bryant's termination.

43. Bryant was not similarly situated to the Plaintiff because she was a non-union employee and she was not covered by the CBA. (Ex. 13, Johnson Dep. 64:1-22; Ex. 21, Bryant EAN Form; Ex. 22, Bryant Position Description.)

**RESPONSE: DENIED** that Bryant was not similarly situated to Ms. Fagbuyi to the extent the performance of their duties and disciplinary provisions were both subject to Section 16-194 of the Prince George's County Code ("PCCC").

44. In addition, Bryant was a Program Chief with supervisory functions unlike the Plaintiff and she was a different grade and class of work. (Ex. 22, Bryant Position Description.)

**RESPONSE:** Admitted.

45. Berry, age 47 (DOB 1968), was hired initially during 2000 under a different Health Officer from 2000 until 2010. (Ex. 26, Berry Application for Employment.)

**RESPONSE:** Admitted.

46. Berry left County service and she was rehired on October 22, 2012, as a Community Health Nurse III in the Division of Epidemiology and Disease Control. (Ex. 27, Berry Letter of Hire, Oct. 12, 2012.)

**RESPONSE:** Admitted.

47. Berry's job duties were different from those of the Plaintiff since Plaintiff did not have any supervisory responsibilities. In addition, Berry was responsible for running special vaccine clinics, supervising other nurses, documenting and maintain medical

records, disease intervention and control, assuming duties and responsibilities of the supervisor, providing input for the budget, and serving on the Emergency Response Team. (Ex. 28, Berry Position Description, Ex. 3, Fagbuyi Position Description.)

> **RESPONSE:** Admitted.

48. Berry had her licensure issue when Donald Shell served as the Health Officer. (Ex. 13, Johnson Dep. 96:16-22; Ex. 14, Johnson Aff. **,r 8;** Ex. 15, Fagbuyi Dep. 56:5-57:17.)

> **RESPONSE:** Admitted.

49. Pamela Creekmur served as the Health Offcier (sic) from 2012 through 2018. (Ex. 14, Johnson Aff. ,r6.)

> **RESPONSE:** Admitted.

50. Creekmur had a zero-tolerance policy for nurses who allowed their licenses to lapse. (Ex. 14, Johnson Aff. **,r21.**)

> **RESPONSE: DENIED.** As an initial matter, the record evidence supporting this averment contains impermissible hearsay. Plaintiff also **DENIES** that Creekmur or defendants actually *had* a zero-tolerance policy as they represented during the Personnel Board that Bryant had been terminated because she had been less than candid about the circumstances of her termination, had lost Creekmur's trust, was in a management position and that she would not have been terminated had she been a staff nurse. Ex. C at 9.

51. The ultimate decision to terminate the Plaintiff was made by Health Offcier (sic) Creekmur and Johnson. (Ex. 13, Johnson Dep. 54:7-57:10; 97:6-98:10; Ex. 14, Johnson Aff., ¶20.)

> **RESPONSE:** Admitted to the extent that as the Health Officer, Creekmur had the

authority to terminate based upon the recommendations of her subordinates, including Plaintiff's immediate supervisor, Inga Lewis and had no actual knowledge of the facts and circumstances of plaintiff's termination. Ex. 9 at 17; Ex. 13 at 55-56, 98.

52.     Lewis did not recommend termination of Plaintiff, nor did she pay any role in the decision-making process. (Ex. 13, Johnson Dep. 54:7-57; 97:6-98:10;104:1-105:12; Ex. 14, Johnson Aff., ¶¶ 17-21.)

**RESPONSE: DENIED**. Ex. 13 at 55-56, 98; Ex. D at 6.

## COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE

53.     Pauline Fagbuyi turned 68 years old in June 2015. Ex. 15 at 4, 41.

54.     In 2013, Ms. Fagbuyi was assigned to the Immunization Unit for the Prince George's County Health Department. Ex. 15. at 10-11, 23.

55.     In about October 2014, Ms. Fagbuyi came under the supervision of Inga Lewis the Immunization Program Manager. Ex. 7 at 16-17, 22; Ex. 15 at 27-28, 30-32, 52.

56.     Lewis supervised about four nurses in the Immunization Unit. Ex. 7 at 17.

57.     Thelesa Bryant, the Immunization Program Chief, was Lewis's immediate supervisor. Ex. 13 at 65; Ex. 15 at 30, 52.

58.     Ms. Fagbuyi had no supervisory duties. Ex. 15 at 28-29.

59.     Lewis had a contentious relationship with her supervisor, Thelesa Bryant. Ex. 7 at 18-20.

60.     According to Lewis, Bryant had given her a "hard time" as her supervisor, and when Lewis was asked during her deposition that she was it correct that she was no longer under Bryant's supervision, Lewis replied, "Oh god, yes." Ex. 7 at 19-20.

61.     Lewis also had a contentious relationship with Pauline Fagbuyi. Ex. 15 63-70.

62.     From October 2014 until July 2015, Lewis made at least four comments to Ms. Fagbuyi about her age and asking when she was going to retire. Id.

63.     The first comments occurred when Ms. Fagbuyi submitted Family Medical Leave Act forms for Lewis's signature. Ex. 15 at 97-98.

64.     Ms. Fagbuyi's medical leave related to issues with her knees, and Lewis told her that she was "getting old." Id.

65.     Ms. Fagbuyi reported this comment to Sonia Johnson. Ex. 15 at 104-105, 113.

66.     Johnson admonished Lewis for her behavior. Ex. 34-36, 92-93; Ex. 15 at 104-105.

67.     Johnson, however, did not advise Ms. Fagbuyi that she had a right to file a formal complaint against Lewis. Ex. 15 at 105-106.

68.     The second event occurred when Lewis asked Ms. Fagbuyi, "How old are you"? Ms. Fagbuyi asked why Lewis was asking, and Lewis responded that she was "just curious." Ex. 15 at 98-99.

69.     In response, Ms. Fagbuyi demanded that Lewis refrain from asking about her age. Id.

70.     Lewis nevertheless persisted in asking about Ms. Fagbuyi's age and when she was going to retire. Id.

71.     Ms. Fagbuyi also overheard a conversation between Lewis and a co-worker "Freda" in which Freda admonished Lewis about inquiring about Ms. Fagbuyi's age and told her it was "not right." Ex. 15 at 100.

72.     Later, Freda advised Ms. Fagbuyi to "be careful. Inga [Lewis] is trying to get rid of you." Ex. 15 at 100-101.

73.     At around the same time, the Health Department was offering monetary

incentives for eligible employees to retire. Ex. 15 at 101-103.

74.    Ms. Fagbuyi had less than ten years of service for the County and did not intend to accept the retirement incentive. Id.

75.    Lewis, however, asked Ms. Fagbuyi whether she would be taking the early retirement incentive and encouraged her to do so. Id.

76.    Lewis admits that she made age-based comments and retirement inquiries to Ms. Fagbuyi. Ex. 7 at 33-35, 81-82, 92.

77.    Ms. Fagbuyi reported these comments again to Sonia Johnson. Ex. 15 at 65, 66.

78.    After reporting Lewis's comments to Johnson, although Ms. Fagbuyi had no disciplinary history, Lewis initiated a reprimand for reportedly being "rude" to a Hispanic client and referred the matter to Bryant. Ex. 15 at 63-64.

79.    During a meeting with Bryant regarding the reprimand recommended by Lewis, Ms. Fagbuyi reported Lewis's age-based comments to her. Ex. 15 at 122-123.

80.    Despite Lewis's recommendation, Ms. Fagbuyi was never disciplined for the issue recommended by Lewis. Ex. 15 at 124.

81.    In May 2015, Lewis "discovered" that Thelesa Bryant's nursing license had expired, although Bryant was *her* supervisor. Ex. 7 at 47-49, 76-77.

82.    As a result of Lewis's discovery, by July 2, 2015, Bryant had been given notice of her proposed termination. Ex. A.

83.    In June 2015, at the same time she was orchestrating Thelesa Bryant's termination, Lewis initiated Ms. Fagbuyi's transfer out of the Immunization Unit. Ex. 7 at 24-33, 82-83; Ex. 15 at 64-69.

84.    According to Lewis, she felt Ms. Fagbuyi was physically unable to do her job in

Immunization. Ex. 7 at 32-33.

85.     Lewis testified that Ms. Fagbuyi "couldn't do the job well anymore," Immunization was not for Ms. Fagbuyi "anymore," her "time served here [was] up," and recommended a "less challenging area." Ex. 7 at 25-28, 32.

86.     The transfer letter was dated July 16, 2015, given to Ms. Fagbuyi on July 21, and she was to report to the HIV unit on August 3, 2015. Id.

87.     On July 21, 2015, the day Ms. Fagbuyi was notified to meet to receive the transfer notice, she knew it was "bad news" because of Lewis's mistreatment of her, and called her union representative. Ex. 15 at 63-64, 77.

88.     At about 9:00 a.m., and within a half hour after receiving the transfer notice, Ms. Fagbuyi informed Lewis that she had received the notice. Ex. 15 at 118, 121.

89.     Ms. Fagbuyi protested and told Lewis that she wanted to stay in Immunization. Ex. 7 at 28-29.

90.     Between 9:00 a.m. and 10:30 a.m. that morning, Lewis went on the Health Board's website to check on the status of Ms. Fagbuyi's license. Ex. 15 at 122.

91.     Like her review of her supervisor's licensure status, Lewis's review of Ms. Fagbuyi's license status on the date she was advised about her transfer was not "random." Ex. 7 at 38-39.

92.     At 10:30 a.m., Lewis reported to Ms. Fagbuyi for the first time that her nursing license had expired three weeks before. Ex. 15 at 122.

93.     Ms. Fagbuyi did not believe she had let her license expire and asked that she return home to retrieve her paperwork. Ex. 7 at 53-54.

94.     Ms. Fagbuyi believed she had renewed her license for two years, but eventually

realized that she had only renewed for one and had mistaken the license expiration date with a credit card expiration date and drove to Baltimore that day to renew her license. Ex. 15 at 35-46, 130.

95.     Ms. Fagbuyi returned to the office that day to present her license, but Lewis had left for the day. Ex. 15 at 130.

96.     According to Lewis, she had a practice of checking her subordinate nurses license status on a "quarterly" basis and knew or should have known that Ms. Fagbuyi's license was due to expire and failed to tell her. Ex. 7 at 43, 75-76; Ex. 15 at 51, 79, 107.

97.     Ms. Fagbuyi had never let her license expire during her tenure with the Health Department. Ex. 7 at 64; Ex. 15 at 40, 50.

98.     Lewis drafted a notice of proposed termination, and Sonia Johnson forwarded it to Pamela Creekmur, the health director. Ex. 13 at 55-56, 98.

99.     Ms. Fagbuyi's explanation for the lapse in her license was given no consideration. Ex. 13 at 74.

100.    No progressive discipline has considered in lieu of terminating Ms. Fagbuyi. Ex. 13 at 61, 73.

101.    Ms. Fagbuyi was surprised when she received the notice of proposed termination since she had been allowed back to work during the interim three weeks and her union president, Deborah Beasley, reassured her that she would not be fired based on her own experience having her license lapse without termination. Ex. 15 at 60-74, 125-126.

102.    Although a nurse was required to have a license at the time of hire, there were no policies requiring continuous licensure at the time of Ms. Fagbuyi's termination. Ex. 7 at 64-66; Ex. 13 at 28-30.

103.    A licensing policy designating a nursing director to ensure licensing was enforce at the time of Ms. Fagbuyi's termination, but no nursing director was in place at the time. Ex. 13 at 26-30, 37.

104.    License monitoring policy, NAC-200, designating a Human Resources personnel with ensuring licensure was enacted after Ms. Fagbuyi's termination. Ex. 7 at 66-67, 69; Ex. 13 at 23-30

105.    "Performance issues" were not the basis for Ms. Fagbuyi's termination although section 16-194 "Performance Related Discipline" was used as the basis for termination. Ex. 7 at 69-70, 84-86.

106.    Section 16-192 of the County Personnel Code *requires* the Health Department to follow a pattern of progressive discipline. Ex. 13 at 79, 86-89, 90, 92.

107.    Termination was not mandated under any of the licensing policies. Ex. 13 at 31-32, 43-44, 46.

108.    As a management, non-union employee, Thelesa Bryant had the right to contest her termination before the Personnel Board. Ex. A, Notice of Termination.

109.    Defendant did not argue before the Board that it had a "zero-tolerance" policy for lapsed nursing licensure. Ex. C at 9. Rather, defendant argued that Bryant was negligent or reckless in allowing her license to expire, had lied about the circumstances of the expiration and was in a management position. Id.

110.    Defendant also argued to the Board that Bryant would not have been terminated if she had not been in management and was in a staff nursing position. Id.

111.    The Board reversed Bryant's termination, citing the cases of Lisa Berry and Deborah Beasley who were not terminated but received progressive discipline. Ex. C.

112.    The Board also found that Bryant's license lapse was an inadvertent mistake. Id.

113.    The Board finally found that the termination was illegal since section 16-192 of the Personnel Code required progressive discipline. Ex. C.

114.    According to Ivy, Creekmur had power to terminate based on the recommendation of her subordinates. Ex. 9 at 17.

115.    Ivy would have raised questions about the validity of defendant's zero-tolerance defense and considered a lesser discipline had she been advised during the hearing of Lewis's role in Bryant's termination and that Ms. Fagbuyi had lodged complaints against Lewis for her age bias. Ex. 9 at 31-32.

116.    At around the time of Ms. Fagbuyi's termination, Lewis was supervising Winie Cadet, age 51; Koketta Brooks, age 48; Lawanda Gurganious, age 59; and Virgen Castaneda, age unknown. Ex. 7 at 17; Ex. D at 5.

117.    Ms. Fagbuyi's position left open after her termination. Ex. D at 7.

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure allows a trial court to render summary judgment for a moving party only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). It is equally well-settled that the moving party bears the burden of showing that there is no genuine issue of material fact or that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In short, summary judgment is appropriate only

when there are no triable issues of fact.

On a motion for summary judgment, "all permissible inferences are to be drawn in [the non-movant's] favor" and "the court *must disregard all evidence favorable to the moving party that the jury is not required to believe.*" *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (emphasis in original); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (court cannot credit moving party's evidence unless it comes from disinterested witnesses and is not contradicted nor impeached); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) ("need for caution" where employer's intent at issue).

Here, the credible evidence submitted by defendants do not remotely meet its initial burden of showing a lack of genuine issue concerning any material fact. In sum, to the extent defendants contends that there are no disputed facts in this matter and that they should prevail as a matter of law, their arguments are utterly devoid of any merit.

## B.  MATERIAL FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT ON MS. FAGBUYI'S AGE DISCRIMINATION CLAIMS

The Age Discrimination in Employment Act forbids an employer from taking an adverse employment action against an employee "because of" the employee's age. 29 U.S.C. § 623(a)(1). Similarly, it is unlawful under Maryland law for an employer to "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of ... age." Md. Code Ann., State Gov't § 20-606(a)(1). A plaintiff bringing a disparate-treatment suit pursuant to the ADEA must prove that age was not merely a motivating factor of the challenged adverse employment action but was in fact its "but-for" cause. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180 (2009); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338 (2013) (reaffirming *Gross*). To

do so, the plaintiff may either present direct evidence of the employer's impermissible motivation or proceed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–07 (1973); *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000) (assuming that *McDonnell Douglas* burden-shifting framework applies to ADEA claims); *Mereish v. Walker,* 359 F.3d 330, 334 (4th Cir. 2004) (applying *McDonnell Douglas* framework to ADEA claims); *Dobkin v. Univ. of Baltimore Sch. of Law,* 210 Md. App. 580, 63 A.3d 692, 699–700 (Md. Ct. Spec. App. 2013).

    i.    <u>Ms. Fagbuyi Can Establish Unlawful Discrimination with Direct Evidence of Age-Based Bias.</u>

Despite the undisputed evidence of Lewis's incessant comments to Ms. Fagbuyi about her age and her retirement, defendants insist that such comments cannot constitute direct evidence of age discrimination as a matter of law. Defendants are wrong.

In *Kneibert v. Thomson Newspapers,* 129 F.3d 444 (8th Cir. 1997), the court remarked that "direct evidence may include employer remarks that 'reflect a discriminatory attitude,' or that demonstrate a 'discriminatory animus in the decisional process.'" *Id.* at 452; *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277 (4th Cir. 2004). In *Bass v. City of Wilson,* 155 F.R.D. 130, 134 (E.D.N.C. 1994), the court held that a "statement made by [the employer] to Plaintiff on the telephone—that Plaintiff did not get the job because he had a chance to hire a 'boy from Fuquay–Varina who was a lot younger'" was sufficient evidence that plaintiff "met his burden of presenting direct evidence of intent to discriminate" for summary judgment purposes. *See also, Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1434 (4th Cir. 1985) (comments by managers explaining that the defendant company "doesn't want salesmen with good records anymore.... [t]hey want young men who can do the work for a lot less money" was sufficient direct evidence of discrimination).

Here, defendants' reliance on cases relating to "stray" [*Mereish v. Walker,* 359 F.3d 330

(4th Cir. 2004)], "isolated" [*Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510 (4th Cir. 2006)] and generalized comments about attracting a younger workforce [*Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir. 1994); *EEOC v. Clay Printing,* 955 F.2d 936 (4th Cir. 1992)] to protest that Lewis's comments could not be construed as direct evidence of discrimination is utterly unavailing.

Ms. Fagbuyi has asserted facts which neither Lewis or defendants dispute that Lewis's comments were not generalized but directly aimed at Ms. Fagbuyi personally. The comments were not stray, light-hearted teasing or joking or off-hand generalized comments. More to the point, Lewis's comments were honestly felt and directly related to her view that Ms. Fagbuyi had gotten too old to perform her job duties.

Indeed, Lewis's deposition testimony relating to transferring Ms. Fagbuyi to the HIV unit could not be more direct evidence of discriminatory bias. Although there existed no objective evidence that Ms. Fagbuyi's work performance was substandard, in Lewis's eyes Ms. Fagbuyi "could not do the job well anymore," the Immunization Unit had become too "challenging" for her and her time in the Unit had expired. Ex. 7 at 25-28, 32. Absent objective evidence that Ms. Fagbuyi's actual performance was lacking, Lewis's comments and attitude could only be interpreted as based on age bias.

Put simply put, Lewis's comments and attitude about Ms. Fagbuyi's purported inability to perform her duties were not based on any objective assessment of her actual performance and presents one of the *unusual* cases in which direct evidence of age bias can be established. *Malina v. Baltimore Gas & Elec. Co.,* 18 F.Supp.2d 596, 605 (D.Md.1998).

> ii.    Ms. Fagbuyi Can Establish a Prima Facie Case of Age Discrimination in Her Employment Termination.

In addition to establishing direct evidence of age bias, Ms. Fagbuyi can establish a prima

facie case of discrimination pursuant to the burden-shifting framework. To prevail under that burden-shifting framework, Ms. Fagbuyi must show that: (1) she is "a member of a protected class"—that is, forty years or older; (2) she "suffered adverse employment action;" (3) she "was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open" or she was replaced by a substantially younger person. *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir. 2004).

Ms. Fagbuyi's burden, however is "minimal." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993); *see also Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252 (1981) (plaintiff's burden is "not onerous"). Moreover, because the facts invariably vary in different employment discrimination cases, the prima facie case proof required in any given case will depend of the specific facts. *McDonnell Douglas,* 411 U.S. at 802 n. 13.

Here, there can be no dispute that Ms. Fagbuyi was a member of the protected class and that she suffered an adverse action as a result of her termination. Defendants further concede that Ms. Fagbuyi was meeting the legitimate expectations of her duties as a Community Nurse II at the time of her termination other than the discrete licensing issue that is the subject of this litigation.

Defendants protest that Ms. Fagbuyi cannot establish that she was replaced by a substantially younger employee or that her position remained open after her termination. Defendants submit no factual averment whatsoever in their Statement of Material Facts not in dispute on this score, as it must. Accordingly, defendants have not raised this issue a material fact not in dispute, has failed to proffer facts to support a finding that it is not a fact in dispute, as is their burden, and have waived any argument as to this prong of Ms. Fagbuyi's burden.

Moreover, defendants' interrogatory responses clearly represent that Ms. Fagbuyi was *not*

replaced after her termination. Ex. D at 7. In short, defendants' contention that Ms. Fagbuyi cannot establish a prima facie case of discrimination is frivolous.

Although Ms. Fagbuyi is not required to do so, she can establish an inference of discrimination because at least one similarly situated employee was not terminated as a result of a licensure lapse. It is well settled that "[t]he very essence of [a discrimination claim] is comparative evidence: Was the Plaintiff treated differently from persons not in her protected group?" *Weinstock v. Columbia Univ.*, No. 95 CV 0569 (JFK), 1996 WL 658437, *9 (S.D.N.Y. Nov. 13, 1996). A showing that defendant treated a similarly situated employee not in her protected group differently is an especially effective way of establishing a prima facie case of discrimination, but "is only one way to discharge that burden." *Adbu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). There is no bright-line in the Fourth Circuit for what makes two jobs similar, but the courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisors, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019).

A plaintiff can establish a prima facie case of disparate treatment with evidence that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated in all *material* respects - not in *all* respects to support at least a minimal inference that the difference of treatment may be attributable to discrimination. *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997).

Ms. Fagbuyi has raised an issue of fact whether she and Deborah Beasley were similarly situated when their respective licenses lapsed. After all, both employees were non-supervisory Community Health Nurses I/II and both had license lapses that were unintentional. Defendants

attempt to distinguish Beasley's lapse as being "not her fault." That Beasley was subjected to *some* discipline, however, wholly undermines defendants' proffer that she bore *no* fault for failing to ensure that her license had not lapsed, and is otherwise a distinction without a difference.

Defendants' admission that Thelesa Bryant was not a comparator to Ms. Fagbuyi, however, does help its cause. Bryant, of course, was a supervisor and manager, factors actually articulated by Creekmur for treating her differently and more severely from a non-supervisory staff nurse, such as Ms. Fagbuyi.

### iii. Defendants' Proffered Explanations for Ms. Fagbuyi's Termination are Pretext for Unlawful Discrimination.

Of course, once a plaintiff meets her initial burden of establishing a prima facie case of discrimination, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination. If defendant does so, the burden returns to the plaintiff to show that the real reason for plaintiff's termination was discrimination and that the employer's proffered reason was a mere pretext. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981).

A plaintiff may demonstrate pretext in one of two ways: (i) by persuading the court that a discriminatory reason more likely motivated the employer than its articulated reason, or (ii) by indirectly showing that the employer's proffered explanation is unworthy of credence. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983); *Burdine,* 450 U.S. at 256.

Further, it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. A reasonable jury's disbelief of the reasons put forward by defendant may, together with the elements of the prima facie case, suffice to show intentional discrimination, and rejection of defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. at 144. The Supreme Court has repeatedly rejected the proposition that employment discrimination plaintiffs must as a routine matter do more than discredit the employer's explanation in order to avoid summary judgment. It has made it clear that "no additional proof of discrimination is required" as a matter of course once plaintiff has shown that a jury could reject the employer's proffered explanation. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). In short, "[e]evidence showing the employer's explanation to be false, standing alone, will ordinarily" permit an inference of discrimination [*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *James v. New York Racing Ass'n*, 233 F.3d 145, 156 (2d Cir. 2000)], and the question at this stage of an employment discrimination case is "simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *Id.*

Defendants have proffered that they had a purported "zero tolerance" for the lapsing of nursing licenses, and that Ms. Fagbuyi was terminated pursuant to that policy. As an initial matter, defendants present no record evidence that *Pamela Creekmur* actually had a zero-tolerance policy when it came to lapsed licensing. Defendants' only proffer Sonia Johnson's self-serving hearsay statement to support the contention that Creekmur had such a policy. Nor, significantly, did Creekmur testify that the grievance hearing that such was her actual policy. More to the point, Creekmur *did* present evidence to the Personnel Board adjudicating Thelesa Bryant's appeal that undermines defendants' assertion that such a policy ever existed. After all, Creekmur presented to the Board a variety of factors for her decision to terminate Bryant, including Bryant's supposed lack of credibility and management position.

That Creekmur also represented to the Board that Bryant would *not* have been fired had she been a staff nurse, like Ms. Fagbuyi, instead of a supervisor and management, exposes

defendants' entire defense for the lie that it is. Instead, a reasonable trier of fact could conclude that Creekmur was merely a rubber stamp for a termination recommendation presented to her by Lewis, Ms. Fagbuyi's immediate supervisor, the subject of complaints of age discrimination by her, and Johnson, who had actual knowledge of those complaints. The Fourth Circuit has stated that "the ADEA do[es] not limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employer" because "such a construction of those discrimination statutes would thwart the very purposes of the acts by allowing employers to insulate themselves from liability simply by hiding behind the blind approvals, albeit non-biased, of formal decisionmakers." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 291 (4th Cir. 2004).

Here, in light of Creekmur's representations to the Personnel Board that she would not have fired a staff nurse; her total lack of involvement in Ms. Fagbuyi's grievance hearing; and Ms. Fagbuyi's lack of seniority and supervisory duties, a reasonable trier of fact could determine that Creekmur relied on the representations of Lewis and Johnson, both with the objective right to recommend discipline, and that Lewis and Johnson possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." *Id.*

In addition, even if Creekmur did actually have a zero-tolerance termination policy relating to nursing licensing, such a policy, as found by the Personnel Board, was illegal under Section 16-192 of the Personnel Code which mandates progressive discipline. Ex. D at 12-13.

In short, a reasonable jury find that defendants' proffered justification for Ms. Fagbuyi's termination was abjectly false, if not entirely illegal.

Cast in this light, defendants' protest that Ms. Fagbuyi has not raised a triable issue of fact that her advancing age was the but-for cause of her termination is devoid of merit. After all, Lewis

conceded in her deposition that she believed Ms. Fagbuyi's transfer out of Immunization and away from her supervision was necessary because of her age. When Ms. Fagbuyi went to Lewis and objected to the transfer, Lewis sought insurance by immediately pulling records of Ms. Fagbuyi's lapsed license that she knew or should have already known about since that was part of her own responsibilities. No reasonable jury could believe that it was a coincidence that Lewis "randomly discovered" that Ms. Fagbuyi's license had expired and that that discovery set in motion her termination.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment must be denied in its entirety.

Dated: New York, New York
June 10, 2019

Respectfully submitted,

/s/ Cynthia Goode Works
Cynthia Goode Works, JD, LLC.
The Law Office of Cynthia Goode Works, LLC
9701 Apollo Drive
Suite 301
Largo, Maryland 20774
(301) 474-5562
www.goodeworkslaw.com


/s/ Lisa Alexis Jones
Lisa Alexis Jones, Esq.
1330 Avenue of the Americas
14th Floor
New York, N.Y. 10019
(646) 350-2823
ljones@ckrlaw.com

Counsel for Plaintiff

Dated: June 10, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2019 I caused to be sent, via electronic mail a copy of the foregoing Memorandum of Law, Statement of Material Facts and Supporting Evidence to:

Tonia Y. Belton-GoFreed, Esq.
Associate County Attorneys
14741 Gov. Oden Bowie Drive, Room 5121
Upper Marlboro, Maryland 20772

*/s/ Cynthia Goode Works*
Cynthia Goode Works