**THE PERSONNEL BOARD PRINCE GEORGE'S COUNTY, MARYLAND**
**1400 McCormick Drive, Suite 320**
**Largo, MD 20774-5313**

| | | |
|---|---|---|
| IN THE MATTER OF | * | |
| | * | |
| THELESA BRYANT | * | DOCKET NO.: 1916-16 |

---

## DECISION AND ORDER

### I.    Procedural Background

This matter comes before the Personnel Board for Prince George's County,

Maryland (hereinafter the "Board") on the appeal of Ms. Thelesa Bryant (hereinafter

"Appellant" or "Bryant") challenging her termination by Pamela B. Creekmur, Health Officer,

Prince George's Health Department (hereinafter "Department", "Appellee" or "Appointing

Authority").

The Appellant worked for the Prince George's County Health Department as a Public

Health Program Chief in the Maternity and Family Planning Program within the Maternal and

Child Health Division of the Health Department since April 7, 2014. The Appellant was a Merit

employee. The letter informing Appellant of her selection to her position stated "Your

employment is contingent upon maintaining an active, valid license from the State of Maryland

as a Registered Nurse".

By letter dated June 22, 2015, the Department notified Appellant of its intent to dismiss

her because of her alleged failure to maintain her nursing licensure as required by the Maryland

Board of Nursing. The letter to the appellant was returned by the United States Post Office and

the appellant was unable to open a copy of the letter sent by email. Accordingly, the Department

reissued the letter on July 2, 2015. To ensure the appellant was given ten days within which to

1

respond to the Notice of Proposed Disciplinary Action – Dismissal. By letter dated July 16, 2015, the Department advised appellant that she was terminated from her position effective the close of business July 17, 2015. Thereafter the appellant filed a timely appeal to this Board and through her counsel, Philip B. Zipin, submitted an Appeal Statement. It is the County's contention that Appellant's license lapsed due to her own fault and that she lied about the circumstances surrounding her non-renewed license so she would not have to take responsibility for her own negligence. The appellant challenges her termination on several grounds. She contends that the dismissal was arbitrary and capricious because it presumes that Ms. Bryant was reckless; the dismissal fails to consider that she was unaware that her license had expired; that the discipline imposed is disproportionate to the infraction given her exemplary performance; that the Department failed to abide by the County's personnel policy of progressive discipline; and that the Department retaliated against her after she applied for Family Medical Leave.

The Prince George's County Government was represented by Amanda Applebaum, Associate County Attorney. The Appellant was represented by Philip B. Zipin, Esq. of Zipin, Amster, & Greenberg, LLC. A pre-hearing conference was held on April 4, 2012. A hearing was held on July 11, 2012. The parties submitted proposed findings of fact and conclusions of law.

## II.   ISSUE AND BURDEN OF PROOF

The issue presented to the Board for its consideration and determination is whether the law and facts, as proved by a preponderance of the evidence, justify the actions taken by the Appointing Authority. In the instant case the Appellee, the County, has the burden of going

2

forward with sufficient evidence to demonstrate that the County had just cause to terminate the Appellant.

The Board's role is to review the authority in law for the taking of the action against the Appellant, and shall sustain the action of the appointing authority, where the law and facts, as proved by a preponderance of the evidence, justify the action taken by the appointing authority. Where the law and/or facts, as proved by a preponderance of the evidence, do not justify the action of the, the Board shall rule in favor of the party who has filed the appeal. The Board *shall not* substitute its judgment for that of the official who had taken the action, but shall attempt to ascertain, based on the preponderance of the evidence presented to the Board, whether there is a reasonable basis to support the actions taken by the official. *See, Section 16-203 (a) (8) (A) Personnel Code.* (emphasis added).

## III.   FINDINGS OF FACT

Evaluating the testimony and making any necessary credibility determinations are vital parts of the Board's responsibilities in reaching a decision in these appeals. Throughout the hearing, the Board kept careful notes of the testimony of the witnesses and the exhibits that the parties relied upon. In coming to the factual findings, the Board had the opportunity to assess the credibility of witnesses. The Board observed the witnesses on direct and cross examination. Among other things, the Board had the opportunity to assess witness demeanor and the findings that follow are based in part of these credibility determinations. The hearing of this appeal was held on December 9, 2015. The Board has considered the testimony, the exhibits and the arguments of counsel. The Board's findings reflect our conclusions regarding the credibility of witnesses and the evidence received as well as the applicable law. To the extent the Board does

3

not address all of the issues, factual and legal, raised in the appeal it is because the Board does not believe that these issues are relevant to its determination.

The Board makes the following findings of fact:

1.      Appellant Thelesa Bryant began her employment with the Prince George's County Board of Health Department on April 7, 2014. The Appointing Authority hired her as a Program Chief overseeing various healthcare initiatives.

2.      The Appointing Authority hired Appellant because it was confident that she had the skills and experience needed to bring much-needed discipline and order to the ranks of the staff nurses.

3.      At the time of her termination, the Appellant was Program Chief for Clinical Services with the Health Department. She was a permanent status employee of the County at the time of her termination.

4.      Prior to working for the Department, Appellant had been a licensed nurse for about eight years in the District of Columbia, and several years in New York.

5.      A condition of her employment was that Ms. Bryant be licensed in Maryland as a registered nurse. Although her position required her to maintain an active Maryland nursing license, Appellant's role at the Department was purely managerial and administrative.  Ms. Bryant did not perform any patient care herself.

6.      Registered nurses in Maryland are licensed by the Maryland Board of Nursing ("MBON").

7.      Nursing licenses are renewed every two years in Maryland by MBON.

8.      Ms. Bryant renewed her Maryland nursing license on March 28, 2014. Appellant paid $146.00 for what she was told and understood to be a two-year license renewal. She did not expect

4

that when she paid for, and was assured she was being granted, a two-year license renewal, she was in fact renewing her license for only eleven (11) months.

9.      Ms. Bryant believed in good faith that her license would expire in 2016.

10.     Appellant never received any criticism or negative feedback from her superiors regarding her work duties in the approximately fourteen (14) months she worked for the Department before the events that gave rise to the instant action occurred.

11.     Ms. Bryant was uniformly praised for the quality of her work according to Diane Young. Ms. Bryant was doing the job she was brought in to do. Some of her staff, however, who had grown accustomed to the Department's lax working standards, resented Appellant for her diligent efforts to instill a strong work ethic in the Department.

12.     Appellant never received a midpoint performance evaluation during her probation period or a past performance appraisal, which the Personnel Law requires to be performed after an employee's first six and twelve months of employment, respectively. She did not get any written formal feedback on her performance. When Ms. Bryant asked her superiors why she had not received these performance evaluations which were so commonplace in her previous experience in the private sector, she was told not to worry about it, that she "was doing fine."

13.     Sonia Johnson, Human Resources ("HR") manager for the Prince George's County Health Department, learned on or about May 26, 2015, that Ms. Bryant's Maryland nursing license had expired and had not been renewed by Ms. Bryant.

14.     Ms. Bryant informed Ms. Diane Young, Associate Director for the Family Health Services Division, that the Department was "well within our right to terminate and that Ms. Bryant should be placed on administrative leave".

5

15.     Sometime within the first two weeks of May 2015, Appellant received a postcard in the mail from the Maryland Board of Nursing ("MBON") reminding her to renew her license. Although the practice according to Ms. Johnson was for MBON to send out the renewal notice prior to a licensee's birthday which in Ms. Bryant's case was February 28, 2015, she did not receive it until May 2015. Ms. Bryant had no reason to believe she would receive a renewal reminder before May 2015 because she believed her license did not expire until 2016. Ms. Bryant called the MBON two days after receiving the notice, and was reassured by the MBON that her license status was valid and indeed had been renewed for two years. Ms. Bryant informed Ms. Young about the postcard she received from MBON. Ms. Young testified that Ms. Bryant believed that her license expired in February 2016.

16.     Ms. Bryant informed Ms. Young and Ms. Johnson that she was attempting to resolve the issue with MBON. She copied Ms. Young and Ms. Johnson on her email correspondence with MBON. Ms. Bryant wrote to MBON stating "I am writing you to request your priority attention to this unresolved matter. Currently, my status is reflected as nonrenewed, which is totally inaccurate".

17.     On the Friday before the Memorial Day weekend, Ms. Young received a telephone call from an employee informing her that the employee had heard that Ms. Bryant was not licensed. She asked HR to look into it. Ms. Young received an email from Ingra Lewis saying that "she had looked in fact, Thelesa did not have a license".

18.     After the Memorial Day weekend, Ms. Young brought the inactive license issue to Appellant's attention. Appellant told Ms. Young that she was not aware that her license had lapsed because she had renewed for two years in March 2015. She further claimed that MBON must have made a processing error because she paid for a two-year renewal in March 2014, so

6

her license should not expire until February 2016. Per Ms. Johnson's instructions, Ms. Young placed Appellant on administrative leave, effective May 27, 2015, to give Appellant the opportunity to renew her license and prove that her license was renewed.

19.     It is undisputed that Ms. Bryant's Maryland nursing license had expired in February 2015.

20.     Ms. Bryant had her registered nursing license renewed within a day of having been placed on administrative leave. Normally, the MBON does not even consider seeing walk-in appointments -- all license renewals must be requested online. However, of Ms. Bryant's perseverance, MBON agreed not only to allow her to walk-in for an appointment, but also agreed to expedite her claim and reinstated her license the very same day.

21.     Appellant discovered the source of the confusion during one of her visits to the MBON. The MBON's nursing license renewal process is not straightforward. Ms. Bryant's understanding from her interactions with MBON is that nurses can apply for only two-year license renewals. These renewed licenses expire on the last day of the nurse's birth month. Further, the year that renewal is required depends on whether the nurse was born on an odd or even year. If a nurse was born in an odd year, then her license expires at the end of her birth month every odd year. If a nurse was born in an even year, then that nurse's license expires at the end of her birth month every even year. Appellant was born in February of an odd year. Therefore, regardless of the actual date she renewed her license, it would expire the following February of an odd year. Because Appellant renewed her Maryland license in March of 2014, the MBON's cryptic rules meant that her license expired the following February of 2015, an odd year. This was true despite the fact that nurses can only purchase, and Appellant did purchase, a two-year renewal and paid a two-year renewal fee. Ms. Bryant did not know this at the

7

time she renewed her license in March 2014. She had not practiced in Maryland for the previous ten years was unfamiliar with these rules.

22.     On May 29, 2015, Ms. Young told Ms. Bryant she could return to work because her license had been renewed. At this point, with the misunderstanding clarified, Appellant believed the entire issue had been resolved. She resumed her work duties as normal.

23.     On June 3, 2015, Ms. Young notified Ms. Bryant that she was once again being placed on administrative leave. Ms. Bryant was informed that the HR at the Department required a letter from MBON admitting it was MBON's fault that Appellant's license had lapsed from February 2015 to May 29, 2015. Appellant had already informed HR that MBON had repeatedly stated it would under no circumstances provide a letter admitting liability for the lapse of Appellant's license. Essentially, the Department was asking Appellant to provide any sort of documentation showing MBON was responsible for Appellant's license going into non-renewed status on February 28, 2015.

24.     Although MBON would not give the letter that HR requested, MBON offered to schedule a three-way call between Ms. Bryant, Michelle Molesworth (the head of the complaints department at the MBON) and Ms. Young. During this call, Molesworth attempted to explain the MBON's renewal rules to. Ms. Molesworth told Ms. Young that Appellant had indeed purchased a two-year renewal in March 2014, but due to the MBON's rules, that two-year renewal expired just eleven (11) months later, in February 2015.

25.     Appellant returned to work on June 10, 2015. On the 15th or 16th of June, Appellant applied for and was granted leave pursuant to the federal Family and Medical Leave Act ("FMLA") to attend to a personal medical condition.

8

26.     On June 11, 2015, Ms. Johnson spoke to Ms. Creekmur, who had finally returned

from her trip, about disciplinary action for Appellant. Based upon the fact that

Appellant had been working without a license for three months, had not told the

Department she was having an issue with her license when she clearly knew, and had not

been able to provide documentation that the lapse was not due to her own fault (as she

claimed), Ms. Creekmur decided to move forward with terminating Appellant. No

independent investigation was performed before deciding to dismiss Appellant. Ms.

Creekmur never met personally with Ms. Bryant who was one of her leaders, to find out

for herself the circumstances underlying the lapsing of Ms. Bryant's license. Without

speaking to her, Ms. Creekmur did not feel Appellant was capable of maintaining a

minimum standard of performance in her role because Appellant was a Program Chief and

"you have to be able to trust your leaders," and "three months, that's a long time.

27.     Ms. Creekmur did not believe that the Ms. Bryant could continue in her role as a

program chief because of this incident.

28.     Ms. Creekmur believed that Appellant would have been able to perform as a nurse

with the Prince George's County Department of Health.

29.     There is no factual basis to Mr. Young's testimony that Appellant would not have been

able to perform satisfactorily in a different position with a lower grade because she still

would have had to work with the same staff and "they no longer had confidence in her, just

as [Ms. Young] didn't".

30.     On June 22, 2015, Appellant received a letter signed by Ms. Creekmur stating that

Ms. Creekmur intended to dismiss Appellant for "failure to maintain your nursing

1239

licensure as required by the [MBON]." A Second Notice was sent on July 2, 2015 because Ms. Bryant never received the initial notice.

31.     On July 16, 2015, Appellant received the letter signed by Ms. Creekmur informing Appellant that she had been dismissed from the Department, effective July 17, 2015. This Final Notice improperly advised Appellant that she had the appeal rights of a probationary employee under §16-173 of the Personnel Law. Probationary employees have very limited appeal rights and carry the burden. Ms. Bryant, however, was a classified employee whose substantive and procedural rights are much broader. In other words, HR, OHRM and Ms. Creekmur made a mistake and provided Ms. Bryant with erroneous advice on the County's personnel law.

32.     The HR office has a full-time employee called the "compliance officer." This employee's sole responsibility is to notify licensed professionals at the Department when their licenses are due to expire. However, the compliance officer was not notifying any of the nursing staff about their licenses during the time Appellant worked at the Department.

33.     On June 11, Pamela Creekmur, the Health Officer in charge of the Department and appointing authority, and Sonia Johnson, the Director of HR, had a conversation and decided to dismiss Appellant. No independent investigation was performed before deciding to dismiss Appellant.

34.     No one in the Department of Health made any effort to contact the MBON directly to determine Appellant's licensure status or for an explanation as to why Ms. Bryant's license was only renewed for less than one year when she had paid for a two-year renewal.

35.   On August 19, 2015, in lieu of a letter admitting liability, the MBON provided Appellant with a payment transaction record showing that she paid for a two-year renewal on March 29, 2014.

36.   The Department did not consider progressive discipline of Ms. Bryant.

37.   Prior to her termination the Appellant had never been disciplined with regard to any matter, including the matter which forms the basis of this appeal.

38.   All nurses employed by the Department of Health are required to be licensed by MBON.

39.   Deborah Beasley was a registered nurse with the Department of Health who worked for a period of time without a license from MBON for several months. Ms. Beasley was also a shop steward and president of the union. Ms. Beasley received a three-day suspension from Ms. Creekmur for not having an active license. This was the same infraction as Ms. Bryant's. However, Ms. Beasley was a staff nurse and Ms. Bryant was a Program Chief.

40.   There was another nurse in the Department, Ms. Lisa Berry, whose license had expired, and she was also given a three-day suspension. Ms. Berry is a nurse in the Department's CBC Program.

41.   Ms. Bryant did not know that her license was expired until she was informed by Ms. Young.

42.   There were no adverse consequences occasioned to the Department during the time that Ms. Bryant's license was expired.

## IV.   APPLICABLE LAW

The initial issue for consideration by this Board is whether the Appellee had just cause to terminate the Appellant. The Board concludes as a matter of law that the appropriate section of the County Personnel Law that applies to the facts of this case are Sections 16-192 and 16-193.

11

The Board's conclusion is based upon the fact that the Appellee does not dispute that there was no implementation of progressive discipline. The only discipline considered was termination. There was no thought full consideration to lesser discipline.

Section 16-192 of the Personnel Code provides that it is the general policy of the Prince George's County to follow a pattern of progressive discipline. In detail that section states:

> "It shall be the policy of Prince George's County to insure that all appointing authorities and supervisors discipline employees under their respective jurisdictions in a fair, reasonable, and equitable manner. In that regard, it **shall** be the general policy of Prince George's County to follow a pattern of progressive discipline which provides employees with notice of deficiencies and an opportunity to improve both performance and conduct problems. All appointing authorities and supervisors shall be encouraged to initiate and/or take authorized disciplinary actions against their employees whenever such disciplinary actions are warranted by virtue of violations of standards of conduct or behavior or failures to maintain satisfactory performance. The job performance and conduct of each employee impacts directly on the public's trust in government and on the County's ability to achieve its mission of service to the public. All employees are, therefore, responsible for adhering to the standards of performance and conduct."

## V.    CONCLUSIONS OF LAW

Personnel Law §16-203(a) (8) sets forth the legal standard that the Personnel Board shall apply to its consideration of appeals. "...The Board shall not substitute its judgment for that of the official who had taken the action, but shall attempt to ascertain, based on the preponderance of evidence presented to the Board, whether there is any reasonable basis to support the action taken by the official." *Id.* The Board has the authority to order, sustain, modify, or reverse the actions giving rise to the appeal, as the case may be. §16-203(a) (1).

The primary determination to be made by this Board is whether there was just cause to terminate the Appellant.

In the instant case the Board has determined that there is no reasonable basis for the Appellant's termination. The Board is mindful of the appointing authority's concern about her

12

lacking trust or confidence in the appellant because her nursing license lapsed, the license being a requirement of her job. The Board is also mindful that Ms. Young shares the same concern. However, the concern is based upon their belief that Ms. Bryant misled them about the expiration of her nursing license or was not forthcoming about the expiration of her license. In the case with Ms. Creekmur, she never met with Ms. Bryant for an explanation prior to her decision to terminate. She relied on Ms. Young's description of the events and the advice of Ms. Johnson. The Board credits the testimony of Ms. Bryant that she did not know that her license had expired until she was advised by Ms. Young. She had no reason to believe that her license had expired since she renewed it in March 2014 for what she thought was a two-year period. She paid for a two-year renewal. When she received a renewal postcard in early May 2015 which was unexpected by her, she called MBON and was reassured by the MBON that her license status was valid and indeed had been renewed for two years. The Board acknowledges that maintaining an active nursing license was a condition of Ms. Bryant's employment and does not take this condition lightly. However, the lapsing of her license was not intentional on Ms. Bryant's part, at most it was negligent on her part, although the Board does not believe she was negligent. She relied on the information that was provided to her by MBON and when it became clear she had been given erroneous information she paid again for a two-year renewal of her nursing license.

The Board concludes that the Appellee failed to meet its burden of proof and that the Appellant's termination was without just cause. The Appellee failed to meet its burden for three reasons. First, the Appellant failed to adhere to the County's general policy on progressive discipline as outlined generally in section 16-192. Second, the Appellee failed to consider that the lapsing of Ms. Bryant's license was inadvertent and not her fault. Third, Ms. Bryant was

13

treated differently than two other nurses similarly situated as Ms. Bryant who were only given 3 days' suspensions.

Up until July 16, 2016, the Appellant had never been disciplined or reprimanded. Rather the testimony of Ms. Creekmur and Ms. Young was very complimentary of Ms. Bryant. As a matter of fact, when Ms. Bryant inquired about a performance evaluation, Ms. Bryant was told by Ms. Young that "she was doing fine and If you're not doing fine, I will let you know". Presumably her performance was very good because she was never given a mid-point evaluation during her probationary period which is a requirement of the personnel code.

The sole reason for Ms. Bryant's termination was the lapsing of her nursing license for three months which lapsing the Board has concluded was not Ms. Bryant's fault. It is undisputed that following the notification that Ms. Bryant's nursing license had expired, she immediately took the necessary steps to have it activated and was able to do so in one day. To be sure, the Board acknowledges that Ms. Creekmur and Ms. Young were disappointed with the lapsing of Ms. Bryant's license. Ms. Butler was equally disappointed. There is no reason to believe otherwise. It is illogical to conclude that she intentionally failed to renew her license or ignored it and risk her employment. Ms. Creekmur decided to terminate the Appellant rather impose a lesser form of progressive discipline even though she acknowledged that if she had spoken with Appellant to discuss whether Appellant actually knew her license had lapsed in February (and discovered that Appellant was unaware and was not intentionally out of compliance), "it could have changed things." Creekmur admitted that if Appellant had good reason to believe her license was current, it would have affected Creekmur's assessment of Appellant's

14

trustworthiness.[1] . As noted above the Board found that the lapsing of Bryant's license was not her fault.

The Appellee's present contention that progressive discipline was not mandated because she lost trust in Ms. Bryant and therefore Ms. Bryant was not capable of maintaining a minimum standard of performance in her role is unsupported. for the same reasons discussed above. Ms. Creekmur never met with Ms. Bryant in reaching this decision and relied on Ms. Young's assessment of Ms. Bryant's explanation. Ms. Young was not satisfied with any explanation from Ms. Bryant. She wanted a receipt from MBON or an admission by MBON that the lapsing of Ms. Butler's license was the fault of MBON. Ms. Butler was able to produce the receipt after she was terminated. Ms. Young based her assessment of Ms. Bryant was flawed. As noted above the Board has found that the expiration of Ms. Bryant's license was not her fault. Therefore, Ms. Young's loss of confidence and Ms. Creekmur's acceptance of Ms. Young's assessment was flawed.

Finally, none of Appellant's superiors considered moving Appellant to a different position or demoting her. The concern was that Appellant could not be trusted to perform the duties of a nurse because she had (intentionally) allowed her license to lapse. Again the Board has found that the lapsing of her license was not intentional. Further the appointing authority did not present evidence to support this concern. The only option that was ever considered for Appellant was dismissal. However, the appointing authority had imposed lesser discipline on other employees whose licenses had lapsed. Deborah Beasley, a staff nurse whose primary duty was not management but direct patient care, received only a

---

[1] *Transcript* at 73.

three-day suspension for the same infraction as Appellant -- having a lapsed nursing license in a position that required an active license. Similarly, the appointing authority only imposed a 3-day suspension on Ms. Lisa Berry who also worked for a period to time with a lapsed license. The appointed authority attempted to distinguish Ms. Beasley's situation from Ms. Bryant's because Ms. Beasley produced a receipt to show that the lapse of her license was not her fault. The Board considers both cases equal since it has found that Ms. Bryant has established that the lapsing of her license was not her fault. The Board also finds no merit in the appointing authority's assertion that the lapsing of Ms. Bryant's license was more egregious because she was a Chief. This assertion would have some merit if Ms. Bryant intentionally did not renew or she negligent in not renewing. However, in a situation in which the lapse was not her fault, no reason exists for ignoring the County's policy of progressive discipline. In this case, the Department jumped directly to dismissal of Appellant even though the Department admitted that it had suffered no negative repercussions as a result of Appellant's three-month lapse. Moreover, the Department did not consider that it had some responsibility with regard to the lapsing of Ms. Bryant's license. The department has a compliance officer whose responsibility is to notify licensed professionals at the Department when their licenses are due to expire. This was not done with Ms. Bryant.

The Board concludes that if any discipline was warranted, the Department had an obligation to administer a form of progressive discipline as outlined in Section 16-192 of the Personnel Law. The Board concludes that the Appellee has failed to meet its burden of proof that the dismissal was for just cause.

16

It is therefore, this <u>19th</u> day of <u>August</u> 2016, by the Personnel Board for Prince George's County, Maryland,

**ORDERED** that the Appellee's decision to dismiss the Appellant Thelesa Bryant from her employment with the Prince George's County is **REVERSED**; it is further

**ORDERED** that the Appellant Thelesa Bryant is reinstated with back pay and accrued benefits. Appellant's back pay shall be reduced by any amounts that the Appellant was able to earn in the interim since her termination including unemployment compensation.

Carolyn F. Scriber, Chair
**Personnel Board**

17

1247